UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:19-CV-00109-BJB-LLK

VULENZO L. BLOUNT, JR.                                                                   PLAINTIFF

v.

STANLEY ENGINEERING FASTENING                                              DEFENDANT

**OPINION & ORDER**

Judge Benjamin Beaton referred this matter to Magistrate Judge Lanny King for hearing and determining all pretrial matters, including non-dispositive motions. [DN 93].

This matter stems from an alleged wrongful termination. [DN 1-1]. Plaintiff claims he was wrongfully terminated due to racial discrimination and retaliation. *Id*. Defendant claims, however, that Plaintiff was terminated for using his cellphone while on a running forklift. [DN 31-1]. This matter is now before the Court on several motions.

*Plaintiff's Motion to Compel and Defendant's Protective Order*. On September 14, 2020, Defendant's filed their Emergency Motion for Protective Order, [DN 54], and their supplement the following day, [DN 55]. This Court then ordered a briefing schedule for the Emergency Protective Order following a status conference to discuss the issue. [DN 59]. On October 8, 2020, Plaintiff filed their initial Response, [DN 61], but this Court Ordered a Supplemental Response from Plaintiff which was to include specific citations to the deposition, [DN 65]. In the meantime, Defendant's filed their Reply on October 22, 2020. [DN 66]. Plaintiff then filed their Supplemental Response on October 27, 2020; included in the superfluous 'Motion for Order to File Plaintiff's Response to Defendant's Emergency Motion for Protective Order and Supplement to Defendant's Motion for Protective Order', [DN 71]. On November 2, 2020 Defendant's filed another Reply. [DN 74].

1

On December 11, 2020, Plaintiff, with neither leave of court, nor the required conference, filed their "Motion to Compel Discovery and Motion for Extension of Discovery Deadline of 12-31-2020". [DN 87]. Even so, on December 14, 2020, for judicial efficiency, this Court ordered Defendant to respond no later than December 23, 2020 and specified that no Reply would be permitted. [DN 89]. On December 18, 2020, Plaintiff filed a Proposed Order to Compel Discovery and Continue the Discovery Deadline. [DN 91]. On December 23, 2020, Defendant's filed their Response. [DN 95]. Finally, on January 4, 2021, Plaintiff's filed a Reply, directly violating the express instruction of the Courts order. [DN 98].

*Defendant's Motion to Compel*. On December 30, 2020, Defendant filed their Motion to Compel, [DN 96]; followed by Plaintiff's response, [DN 99], and Defendant's reply, [DN 101]. Then, on February 2, 2021, Plaintiff sought leave to file a sur-reply, [DN 106], and Defendant responded, [DN 108]. As a matter of judicial efficiency, the Court will summarily grant Plaintiff's motion for leave, [DN 106], and consider their sur-reply, [DN 106-2].

*Defendant's Motion to Extend the Deadline*. On February 26, 2021, Defendant filed their Motion to Extend Deadline to File Dispositive Motions and Daubert Motions, [DN 110], to which Plaintiff filed their response, [DN 113].

The Motions are now fully briefed and ripe for adjudication. For the reasons set forth herein, Defendant's Emergency Motions for Protective Order, [DN 54, 55], are **GRANTED**, Plaintiff's Motion to Compel Discovery and Motion for Extension of Discovery Deadline of 12-31-2020, [DN 87] is **DENIED**, Defendant's Motion to Compel, [DN 96], is **DENIED**, Plaintiff's Motion for Leave to File a sur-reply, [DN 106], is **GRANTED**, and Defendant's Motion to Extend Deadline to File Dispositive Motions and Daubert Motions, [DN 110], is **GRANTED**.

# DISCUSSION

Defendant requests the Court enter a Protective Order barring plaintiff from obtaining Defendant's employees' cell phone records and personnel files. [DN 54, 55]. Defendant also requests this Court compel Plaintiff to provide information and documents related to Plaintiff's work as a realtor, [DN 96], and that this Court extend the deadline to file dispositive and Daubert motions, [DN 110]. Meanwhile, Plaintiff requests the Court compel the re-opening of eight depositions and grant an extension of the discovery deadline. [DN 87]. The Court shall address each of these issues in turn.

## A. Production of Employees' Cell Phone Records

Defendant alleges that Plaintiff did not comply with proper notice in its initial subpoena where Defense counsel did not receive its copies of any subpoenas prior to the nonparty witness service.[1] [DN 54, 55]. Plaintiff submits that "Defendant was given seven (7) weeks of notice," [DN 61 at 5, DN 71 Ex. 1 at 4-5], but Plaintiff is referring to materially distinct subpoenas that, even if related, do nothing to rectify those at issue here. To be sure, Plaintiff failed to comply with proper notice.

Indeed, this could present a circumstance where the protective order is required, rather than merely permitted. Fed. R. Civ. P 45(d)(3). Specifically, Defendant argues that the late-breaking subpoenas prejudiced their ability to evaluate and object to the subpoena, which would implicate Rule 45(d)(3)(i). [DN 45 at 6]. However, considering the exhaustive briefing submitted by both Plaintiff and Defendant, this is not a compelling reason for a protective order. This court will perform the substantive balancing despite the Plaintiff's procedural violation.

---

[1] Only six of the eight identified are properly before the Court as there is no evidence that the cell phone records of Chris Long or Breck Cavanaugh were ever formally requested. Nothing submitted by Plaintiff gives this Court reason to believe that these records were requested. The Defendant, however, provides the request given to these two deponents, where cell phone records are notably absent. [DN 95, Ex. 1]

3

Federal Rule of Civil Procedure 26 sets forth the relevant rule regarding the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). And Rule 26(b)(2)(C) provides when this Court is required to limit discovery:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> >
> > (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> >
> > (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). And here, the Court finds that the discovery sought is indeed unreasonably cumulative, could be obtained from another more convenient source, and that the Plaintiff had ample opportunity to obtain the information by discovery.

First, Plaintiff did ask about cell phone usage during the depositions. Specifically, Plaintiff concedes that Breck Cavanaugh was asked about phone usage during his deposition. [DN 61 at 7]. And Rick Taylor was asked about other employee's cell phone usage, but not his own. [DN 66 at 11]. Further, David Noel was asked about the disciplinary warning he received in connection with cell phone usage. [DN 66 at 14].

4

Second, Plaintiff had the opportunity to question witnesses about cell phone usage in the workplace but failed to ask the questions. Plaintiff did not ask Tim Nosbusch, Brian Blake, or Scottie Brumfield any questions about phone usage. [DN 66 at 14].

Finally, the nonparty status of seven of the eight people whose cell phone records were requested is highly relevant.[2] Not one of the deponents has or had a company-provided phone. [DN 66 at 10]. Fed. R. Civ. P. 45 governs nonparty subpoenas and a court "must quash or modify a subpoena" that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). When dealing with a non-party, "the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non-party." *Medical Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 92 (S.D. Ohio 2013).

While Defendant gives the rote justification that these cell phone records are necessary to prove the reasons for Mr. Blount's firing were pretextual, this Court sees no reason why other sources could not be used. Certainly, the deposition questioning itself *was* used to some extent; proving there was ample opportunity to obtain this information during the discovery. This, considering the non-party status of deponents, demonstrates undue burden. Thus, the Defendant successfully met their burden to outweigh the presumption in favor of broad disclosure.

### B. Production of Employees' Personnel Files.

In briefing, Plaintiff requests the Court compel Defendant to produce the personnel files of the same eight deponents.[3] However, the subpoenas were not issued to the Defendant, but

---

[2] It is important to note that Mr. Taylor, the party-member whose cell phone records were requested, was not a supervisor at the time of the incident. [DN 66 at 10].

[3] Only seven are properly before the Court as there is no evidence that the personnel records of Rick Taylor were ever formally requested. Plaintiff claims that this Court ordered the files be produced by May 15, but this is a weighty mischaracterization of the proceedings. [DN 98 at 2]. Nothing submitted by Plaintiff gives this Court reason to believe that Rick Taylor's personnel files were ever requested. The Defendant, however, provides an interrogatory request from Plaintiff for several personnel files, where Rick Taylor's name is notably absent. [DN 95, Ex. 4] Thus, where the only reference the Plaintiff could be making is to this Court's amended scheduling order,

5

exclusively to the non-party deponents. These subpoenas demanded that each non-party deponent produce their original personnel file. [DN 54 at 6-7, 55 at 3-4]. These files would neither be under their control or in their possession. Because of this Defendant's assert that "these subpoenas are roundabout requests for business records in Defendant Stanley's possession[.]" [DN 54 at 7]. This Court is inclined to agree.

Defendant submits that they were not attempting to circumvent Rule 45; rather, they were "checking" whether Defendant had produced the personnel files in their entirety. [DN 61 at 4]. This appears to be a justification rather than a denial, that Plaintiff was indeed seeking an inspection of documents

Whereas non-party discovery is governed by Rule 34, requests to a party should be governed by Rule 45. Fed. R. Civ. P 34(c). Federal Courts have found that, though the terms don't limit it as such, Rule 45 "should not be used to obtain pretrial production of documents or things, or inspection of premises, from a party in circumvention of discovery rules or orders." *Shulman v. Amazon.com.KYDC LLC*, No. CIV.A. 13-5-DLB-REW, 2014 WL 4103528, at *5 (E.D. Ky. Aug. 15, 2014) (quoting *Stokes v. Xerox Corp.,* Civ. A. No. 05–cv–71683–DT, 2006 WL 6686584 at *3 (E.D.Mich. Oct. 5, 2006).

Here, unlike in *Shulman*, where the subpoena was served directly to the party, or in *Stokes*, where the subpoena was served to a party-representative, these subpoenas were served onto non-party deponents with no custody or possession of the desired information. This renders those subpoenas forceless. In these cases, it was an unusual case of circumvention, but one that logically connected to the information sought. Here, Plaintiff seems to fully acknowledge that the deponents served do not have access to the information with little concern, stating: "Plaintiff was simply

---

where Defendant was ordered to respond to written discovery by May 15, 2020, it could not include Rick Taylor's personnel file. [DN at 25].

6

requesting the Defendant, the party, or the nonparty [sic] bring his file for inspection or bring the original files for the Plaintiff to see if the entire deponent's file was produced by Defendant, not as in Shulman." [DN at 71, Ex 1]. To be sure, it is different, but rather than distinguishing the case, this amplifies the reasons this cannot be dismissed as a mere technical defect.

### C. Second Deposition of the Eight Defendant's Employee Depositions

Where a deponent has already been deposed, the party must obtain leave of court to take the deposition and the Court must grant leave to resume the deposition. Fed. R. Civ. P. 30(a)(2)(A)(ii). These depositions are disfavored because of the cost and burden, and because they "provide[ ] the deposing party with an unfair strategic advantage, offering it multiple bites at the apple, each time with better information than the last." *Franklin v. Highland Park Police Officer Hollis Smith*, No. CV 15-12995, 2016 WL 6652744, at *2-3 (E.D. Mich. July 7, 2016), *objections overruled sub nom. Franklin v. City of Highland Park Police Officer Hollis Smith*, No. 15-CV-12995, 2016 WL 4267827 (E.D. Mich. Aug. 15, 2016) (citing *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 235 (E.D. Pa. 2008).

The Plaintiff gave four reasons for his request to reopen depositions: (1) "to take a short follow-up deposition from David Noel to answer the certified question"; (2) "to take a short follow-up deposition for Rick Taylor to answer the certified question"; (3) "to take short follow-up depositions of Bonnie Taylor, Chris Long, Tim Nosbusch Brian Blake, David Noel, Scottie Brumfield, Breck Cavanaugh, and Rick Taylor to look at their cell-phone records for 2018[,]" [DN 87 1-2]; (4) "The Defendant submitted an errata sheet in November, 2020 for Chris Long's deposition" that "needs to be questioned in a short follow-up deposition, [DN 98 at 3].

Here, as with the cell phone records, the Court is presented with the circumstances where discovery must be limited. The determination turns on the scope of discovery—

"the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)" Fed. R. Civ. P. 30(a)(2). And here, the Court finds that continuing these depositions would not fall within the scope. Specifically, Plaintiff posits that all eight depositions should be reopened once the attorney has received the subpoenaed documents and information. And, independently, that the depositions of David Noel and Rick Taylor should be permitted for her to re-ask her certified question.

First, neither certified question asked in either deposition acts as a persuasive reason to reopen the depositions. In one deposition, the deponent refused to answer questions about whether they had personally, and independent of the company or litigation, attended rehabilitation.[4] [DN 87, EX 1]. The testimony submitted here provides persuasive evidence that reopening the deposition would be fruitless where he specifically states: "Unless you want to get a court order, it's not coming up." *Id.*

The second certified question is no question at all. The exhibit makes clear that the attorney ended the deposition and stated that she would like to continue once she had received personnel files.

Where this Court does not compel the personnel files nor cell phone records, these independent reasons are insufficient. And finally, without further justification, the errata sheet ought to have decreased the need for additional testimony, not justified his further deposition. Accordingly, Plaintiff's request for further deposition of the eight prior deponents is denied.

### D. Requests related to Plaintiff's Realty Business

---

[4] This is not a case of obstruction by Defendant's attorney during the deposition. Rather, this is a third party who has insisted they will not answer an unrelated line of question. In fact, Ms. Cooke encouraged the witness to answer the question.

Defendant's Motion to Compel requests that the Court compel Plaintiff to identify contact information for brokerages, agents, lenders, and clients he communicated with in his role as a real estate agent between January 1, 2015 and August 28, 2018. Generally, a party may obtain discovery of any non-privileged matter that is relevant to any issue in the case, or reasonably calculated to lead to matter relevant to any issue in the case.[5] Specifically, this Court must "consider[] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Federal Rule of Civil Procedure 26(b)(1).

Plaintiff submits that Interrogatory 25 and the Request for Production of documents are not relevant and should not be discoverable. [DN 99 at 5]. Though, relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Albritton v. CVS Caremark Corp.*, No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Here, Defendant asserts that "evidence specifically about Blount's real estate calls or texts while working at Stanley is relevant and probative of Plaintiff's claims and Stanley's defenses" because it "may constitute time theft and violate Stanley's practices and policies" and "is also relevant to Blount's job performance while at Stanley." [DN 96 at 4].

This is outside the scope of discovery. This is particularly true where Defendant has Plaintiff's entire phone record. The stated reason for Plaintiff's firing was his violation of a last

---

[5] Plaintiff also submits that producing this information would "break the law" since they are subject to regulations as a real estate agent. [DN 99 at 15-16]. This is unpersuasive as Plaintiff, despite including a large portion of the KAR regulation as exhibits, fails to identify what about the requests would force violation of the regulation.

9

chance agreement. [DN 99 at 3; 31-1]. Plaintiff allegedly used his phone on a running forklift, which Defendant had a policy against. Thus, where Defendant already has access to evidence of every call or text sent during work hours, the identities of the correspondents bears no probative value toward his performance or his violation of policy.

The Defendant also argues that this is discoverable as it is after-acquired evidence of wrongdoing, citing *McKennon v. Nashville Banner Publ. Co.,* 513 U.S. 352, 362 (1995). However, *McKennon* is discussing how to properly measure backpay considering the after-acquired evidence of wrongdoing, not providing justification for the discovery of such evidence. [DN 96 at 4]. Here, Defendant does not currently possess after-acquired evidence of wrongdoing, and instead appears to be seeking it. Thus, the fact that this evidence is allegedly of wrongdoing has little bearing here.

Finally, Defendant argues that discovery bears on Blount's credibility since he has denied using his phone for his real estate business during work hours. [DN 96 at 4-5]. To be sure, information regarding the credibility of deponents can be both relevant and discoverable. Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note, 2000 Amendment ("information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.") Here, the circumstances are such that the information is not discoverable. Plaintiff was cooperative during the excerpt provided and the testimony cited is neither evasive nor contradictory. While Defendant is certainly entitled to probe the veracity of Plaintiff's positions, they are not entitled to document production each time a deponent fails to answer the way they prefer.

### E. Extension of the Fact Discovery Deadlines

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). District courts have broad discretion in managing the discovery process and controlling their dockets. *Marie v. Am. Red. Cross*, 771 F.3d 344, 366 (6th Cir. 2014). The Sixth Circuit has established several factors to determine whether good cause exists to modify a discovery schedule, including:

> (1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to . . . prior discovery requests.

*Bentkowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011) (quoting *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010)). The primary measure of these factors and the good cause standard, however, is "whether the moving party was diligent in pursuing discovery." *Bradford v. Shrock*, No. 3:11CV-00488-DJH, 2017 WL 3444801, at *2 (W.D. Ky. Aug. 10, 2017) (citing *Marie*, 771 F.3d at 366) (additional citation omitted)). And Plaintiff was not diligent in pursuing discovery.

When considering Plaintiff's Motion to Extend Fact Discovery, it is important to note that Plaintiff was given ample time to pursue discovery; including the four-month extension granted by this Court. [DN 20]. Certainly, with over a year to obtain the information discussed here, Plaintiff had numerous opportunities to make proper requests. This is particularly true bearing in mind how responsive Defendant was to the requests.

The Court should also consider whether there would be any prejudice to the party opposing the modification of the discovery schedule. *Bradford*, 2017 WL 3444801, at *4 (citing *Inge v. Rock Financial Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)) (additional citation omitted)). Reopening discovery this late in the litigation would certainly prejudice the Defendant. This,

combined with the lack of diligence presented during discovery by Plaintiff, provide ample reason not to reopen discovery.

Plaintiff has not met their burden to show good cause, therefore reopening discovery is not warranted.

### F. Extension of Deadlines for Dispositive Motions and Daubert Motions

The Defendant correctly points out the deadline to file dispositive and Daubert motions in this case was March 1, 2021. [DN 110]. And that the motions at issue in this order bear directly on matters that this court anticipates will be raised at the dispositive motion stage. *Id.* It is a fair concern because, indeed, if fact discovery were to be reopened, it would necessarily change subsequent proceedings. So, in an abundance of caution, this Court shall adjust the scheduling order such that the deadlines prejudice neither party.

Plaintiff, in a brief that primarily discusses other motions, asserts that the "Defendant should not be given additional time when the Defendant has not cooperated with the Plaintiff." [DN 113]. As support for this position, Plaintiff reiterates the discovery disputes discussed in the preceding sections of this order. *Id.* While this alone is unconvincing, it does implicate several factors outlined by the sixth circuit in *Bentowski*, as analyzed above.

The first factor weighs in favor of an extension because Defendant has not been dilatory. Rather, they have diligently responded within the briefing schedules and followed correct procedure. And unlike the modification of a fact discovery deadline, the request to extend the dispositive motion deadline will not adversely affect future deadlines. Thus, these factors weigh in favor of extension, where none weigh against. However, this Court ought to also look to determine whether an extension would prejudice Plaintiff. Plaintiff submits none, and it is not

clear to this Court how the extension might prejudice either party. Thus, the deadline to file dispositive motions and Daubert motions ought to be extended.

## CONCLUSION

For the foregoing reasons, Defendant's Emergency Motions for Protective Order, [DN 54, 55], are **GRANTED** and Plaintiff's Motion to Compel Discovery and Motion for Extension of Discovery Deadline of 12-31-2020, [DN 87] is **DENIED**, Defendant's Motion to Compel, [DN 96], is **DENIED**, Plaintiff's Motion for Leave to File a Sur-reply, [DN 106], is **GRANTED**, and Defendant's Motion to Extend Deadline to File Dispositive Motions and Daubert Motions, [DN 110], is **GRANTED**.

Accordingly, **IT IS HEREBY ORDERED:** The Court's October 25, 2019, Scheduling Order, [DN 8], and its May 1, 2020 Order extending certain deadlines, [DN 25], are hereby **AMENDED** as follows:

1. No later than **April 8, 2021,** the parties shall file all dispositive motions and any motions objecting to the admissibility of expert witness testimony under Rule 702 of the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

2. Except as amended herein, the Court's October 25, 2019, Scheduling Order, [DN 8], and its May 1, 2020 Order extending certain deadlines, [DN 25], shall remain unchanged and in effect.

**IT IS SO ORDERED.**
March 11, 2021

Lanny King, Magistrate Judge
United States District Court

c:    Counsel