## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

VULENZO L. BLOUNT, JR.                                    PLAINTIFF

v.                                              No. 5:19-cv-109-BJB

STANLEY ENGINEERING FASTENING                            DEFENDANT

\* \* \* \* \*

### OPINION & ORDER

Vulenzo L. Blount, Jr. sued his former employer, Stanley Engineering Fastening, for racial discrimination and retaliation under the Kentucky Civil Rights Act. Stanley fired Blount after receiving a report that he used his phone while sitting on a running forklift. This violated a Last Chance Agreement he signed for a similar violation of safety policies several months earlier. Blount denies he did this and asserts that Stanley didn't fire white employees for similar or worse conduct. He also says Stanley sought out reasons to fire him based on an EEOC complaint he filed years earlier. Stanley argues that Blount was fired solely for his repeated safety violations and that his charges of discrimination are baseless.

Aside from these important issues, however, concerns about professionalism have suffused this litigation. This Court has already had to sanction Blount's counsel based on uncooperative and belligerent conduct during discovery. DN 41. Even after this, she moved to set aside the Magistrate Judge's opinion and this Court's opinion denying her first motion to set aside. DN 137. At every step, including the motions for summary judgment, counsel complained about discovery and lobbed baseless allegations at Stanley. In addition, she has proffered inadmissible evidence and attempted to substantially alter her client's deposition transcript to his advantage. These actions are unbecoming of anyone, much less an officer of the court. So the Court denies Blount's motion to set aside the Court's opinion (DN 137), denies requests for additional discovery, excludes Blount's first affidavit, strikes part of the second affidavit, and grants Stanley's motion to exclude Blount's wife as an expert on her husband's alleged emotional damages (DN 122).

The actual merits of the case received similar attention. Blount's approach was to fire scattershot arguments at every stage. Some are frivolous and others incoherent. While the Court has attempted to address every argument, some iterations may have escaped attention. It's not easy to impose a classical structure on Blount's attempts at modern art. But this opinion strives to explain why Blount's gallery of arguments—even viewed in its best light—deserves criticism.

Blount's claims ultimately fall short based on the summary-judgment record. First, he attempts to establish a prima facie case of discrimination by comparing his situation to that of several white employees. But none of those comparators were similar in the legally relevant ways, so Blount cannot make out the necessary prima facie showing. Second, Stanley offered a legitimate non-discriminatory reason— serious safety violations—for firing Blount. Third, Blount cannot prove this justification was pretext for intentional discrimination. Fourth, these same problems also doom Blount's retaliation claim, and in addition he cannot prove that his EEOC complaint caused his termination. So the Court grants Stanley's motion for summary judgment (DN 121) and denies Blount's (DN 111).

## I.   Background

Vulenzo Blount Jr. worked for Stanley Engineering Fastening—a parts-manufacturing division of Stanley Black & Decker, Inc.—for 21 years. Kent Shane Declaration (DN 121-2) ¶ 10; Jeff Allen Declaration (DN 121-3) ¶ 4. Most recently he operated a forklift in the Hopkinsville, Kentucky warehouse. Shane Dec. ¶ 11. Due to the dangerous industrial nature of the work, Stanley maintains various safety policies, including a prohibition on using phones while working on the plant floor. General Plant Safety Rules (DN 121-2 at p. 16) ¶ 14. Blount received training on these policies and forklift safety throughout his employment. Blount Deposition (DN 121-4) at 143–45. Despite these policies, Plant Director Kent Shane says he warned Blount multiple times against using his phone on the floor. Shane Dec. ¶ 13. Blount asserts that he only used his phone during breaks for his second job as a real estate agent. Blount Motion for Summary Judgment (DN 111) at 8.

On January 31, 2018, Bonnie Taylor filed a report alleging that Blount was driving a forklift towards her with "neither of his hands on the wheel" because he was manipulating his smart watch. Taylor First Witness Statement (DN 121-5); Taylor Deposition (DN 121-6) at 43. Taylor claimed she then spent a few minutes finishing her task before witnessing Blount using his smartwatch again on a running (but not moving) forklift. Taylor First Statement. Taylor reported the incident on a Behavior Based Safety card and to supervisor Jeff Allen, kicking off an investigation. BBS Card (DN 121-7); Taylor Depo. at 40, 63–64; Allen Dec. ¶ 6. When asked about the incident, Blount simply denied any wrongdoing without offering any explanation. Shane Dec. ¶ 14. Finding Taylor credible, the company determined that the incident did occur. *Id.*

Given the serious safety concerns that using a smart watch while driving a forklift raised, Stanley wanted to terminate Blount immediately. ¶¶ 15–16. Blount's union, however, proposed a suspension and "Last Chance Agreement," which both Stanley and Blount agreed to. Blount Last Chance Agreement (DN 121-8). The agreement warned Blount that any violation of safety policies within two years would result in immediate termination. *Id.*

2

Less than a year later, on August 28, 2018, Taylor once again reported that Blount was using his phone on a running forklift. Taylor Second Witness Statement (DN 121-9); Taylor Depo. at 63. Another investigation ensued and Blount denied the conduct. Shane Dec. ¶ 22; Blount Depo. at 355–57. The investigation concluded that Blount violated his Last Chance Agreement and Stanley terminated him on that basis. Shane Dec. ¶ 22. The union initially filed a grievance and sought Blount's phone records to provide some clarity and save Blount's job. Blount Depo. at 363; Texts Between the Union and Blount (DN 121-10). Blount refused, saying (untruthfully) that he had an attorney who told him not to turn over his records. Blount Depo. at 353–54. So the union declined to help Blount and his termination stood. Union Letter (DN 121-11).

Relatedly, back in 2015, Blount had filed an EEOC complaint against Stanley for not promoting him. Blount Summary Judgment Response (DN 128) at 8–9. The EEOC dismissed the complaint in 2016 because it was "unable to conclude that the information obtained establishes violations of the statutes." EEOC Dismissal (DN 128-3). Blount, without support or elaboration, now asserts that he somehow continued to help the EEOC investigate his complaint in 2016—after the EEOC rejected it. *See* Blount Response at 9.

A retaliation claim based on the EEOC complaint, as well as a discrimination claim based on the forklift-phone incidents, form the basis for this lawsuit. In 2019, Blount sued Stanley for retaliation and intentional discrimination under Kentucky Civil Rights Act KRS 344.040 in Christian County, Circuit Court. DN 1-1. Stanley removed to federal court based on diversity jurisdiction. DN 1. Then a slew of discovery disputes arose. *See, e.g.,* DN 31. This culminated in Magistrate Judge King compelling Blount's counsel to provide his phone records and sanctioning her. DN 41. Blount's counsel moved to set aside that decision. DN 49.

After finally receiving those phone records, Stanley argued they corroborated Taylor's account. For the first incident, Taylor said she witnessed Blount on his smartwatch at "approximately 2:35pm." Taylor First Statement. Blount received at least 5 text messages between 2:30 and 2:32. First Incident AT&T Records (DN 121-12). These messages would cause Blount's smart watch to vibrate. Blount Depo. at 476–77. Taylor also said she saw him on his watch a few minutes later. Taylor First Statement. The records show Blount *sent* a text 6 minutes after the first incident. First Incident AT&T Records.

As for the second incident in August, Taylor reported she saw Blount on his phone between 12:30 and 1:00. Taylor Second Witness Statement. During this period, Blount received a text and *sent* at least two messages. Second Incident AT&T Records (DN 121-13). Moreover, the records reflect numerous incoming and outgoing texts and calls during the workday. *Id.*; Blount Depo. at 570 (admitting to sending "a lot" of texts while at Stanley). Blount claims that the records have numerous mistakes and reflect spam calls. Blount Response at 25–26. This would not, however,

3

necessarily explain the text messages he received, and certainly couldn't explain the text messages he sent.

In the meantime, Blount filed a motion for summary judgment while also seeking additional discovery. DN 111. Judge King resolved all outstanding discovery issues and no one filed a timely objection. DN 116. Stanley then filed a motion for summary judgment, DN 121, and a motion to exclude Blount's wife as an expert, DN 122. Eventually, the Court denied Blount's motion to set aside Judge King's order. DN 135. Blount has since moved to set aside that order. DN 137.

## II.   Analysis

### A. Discovery

Throughout this case, Blount's counsel has repeatedly abused the discovery process. For example, Blount refused to answer deposition questions about his cell phone because his counsel instructed him that such information was private, and the defendants were just trying to get him fired again. DN 31-4 at 138:19–140:17. His counsel also filed an errata sheet ("corrections") to his deposition transcript that completely changed answers that strike at the heart of the case, such as:

- Change ["Not that I can recall"] to "Yes" Because race was a substantial factor.
- Delete "I'm not saying it was race or whatever" Because race was a substantial factor in Bonnie's lie.

Errata Sheet (DN 32-2) at 5; *see also* Set Aside Order (DN 135) at 4–5 (discussing purported errata).

Stanley moved to strike the errata sheet for making substantive changes (DN 32), to compel responses about Blount's phone (DN 31), and for sanctions (DN 31). Magistrate Judge King granted all of Stanley's motions. DN 41. Blount's counsel moved to set aside this opinion in the hopes of avoiding sanctions. Motion to Set Aside (DN 49). In the process, Blount's counsel oddly appeared to make additional discovery requests. *See id*. at 2–8; Response to Motion to Set Aside (DN 105) at 2–4. The Court denied these new discovery requests as improper and denied the motion to set aside, affirming Judge King's order. Set Aside Order at 2, 6. The Court also noted that his counsel's lack of professionalism, deceptive discovery practices, and baseless accusations that Stanley was attempting to get Blount fired also justified the sanctions. *Id*. at 3–5.

Yet the erratic discovery-related requests did not cease there. Blount's counsel filed a motion for summary judgment that primarily consisted of requests to rule on various discovery motions and to allow filing of eight full depositions. Blount MSJ at 1–4, 8–11. Magistrate Judge King has since ruled against Blount on most of these motions, so the requests are now moot. DN 116. But the request to file eight entire

4

depositions is still live.  Magistrate Judge King had previously denied this same request as premature and noted that Blount could file "necessary portions" to support future motions.  DN 104 at 2.  It is up to the parties to cite to "particular parts of materials in the record" for summary judgment so that the Court does not have to waste time and resources sifting through a mountain of exhibits in the hopes of discovering the relevant pieces.  FED. R. CIV. P. 56(c)(1).  As a result, courts in this circuit have struck uncited portions of depositions to limit the appropriate record.  *See Comerica Bank v. Papa*, Nos. 3-74894, 3-60200, 2006 WL 1547719, at *6 (E.D. Mich. May 31, 2006) ("The practice of this Court limits depositions transcripts to those pages relevant as support for a party's statement of material facts.").  This approach is appropriate here, as the eight depositions are not fully relevant and would create unnecessary burdens for the Court and counterparty.  But, giving Blount the benefit of any doubt, the Court allows the filing of the entire transcripts—but will only consider the portions Blount cited, consistent with Rule 56(c).

If only that were all.  In several related responses, Blount's counsel continuously complained about discovery even after filing a motion for summary judgment in his favor.  *See* Blount Response at 10–11, 14, 16–21, 28; Blount Reply (DN 132) at 2, 13–14.  These objections are far-fetched and incendiary:

- "[T]he Defendant has concealed [Adam Perry's] location from the Plaintiff during discovery in 2020 and forced other Plaintiff witnesses to retire (Sherlie Johnson), be disabled (Cliff Gray), and not allow deposition of Tim Nosbusch," Reply at 2.

- "This"—describing a litany of allegedly ignored requests—"is how it went all 2020 year."  Blount Response at 16.

- "Just because the covid-19 virus is still with us, the Plaintiff must be allowed due process and equal protection in the proof of his case," by which he meant requests for numerous depositions, personal files, and phone records.  *Id*. at 21.

- Accusing Stanley of "hiding proof" and questioning "[w]here is Defendant's good faith?"  *Id*.

- "[T]he Court must not reasonably rely on Defendant's alleged facts," because "Defendant obstructed discovery and the Plaintiff's proof."  *Id*. at 20.

- Accusing Stanley of attempting to get Blount fired from his current job.  *Id*. at 22

- And arguing that all of this amounts to proof on the merits of pretext and intentional discrimination.  Blount Reply at 13; Blount Response at 18, 24.

These filings, of course, contain much more of the same.  The rhetoric and accusations are unprofessional, unsupported by law, and only serve to distract from the merits of Blount's case.  Discovery lasted for 14 months and ended on December

31, 2020.  DN 25.  The dispositive-motions deadline passed on April 8, 2021.  DN 116.  So even considering the pandemic, Blount had ample time to uncover evidence to support his summary judgment motion and opposition.  *See Mueller v. 84 Lumber Co.*, No. 3:15-cv-838, 2016 WL 5868087, at *3 (W.D. Ky. Oct. 6, 2016) (summary judgment not premature where discovery and dispositive motion deadlines had passed).  Yet Blount did not raise these concerns with the magistrate judge, object to any discovery orders, or make many of these new discovery requests before the deadlines.  *See, e.g.,* FED. R. CIV. P. 26(c) (good-faith meet-and-confer certification required in motion for a protective order); *Rodriguez v. Pataki*, 293 F. Supp. 2d 313, 315 (S.D.N.Y. 2003) (once referred, magistrate judge should deal with discovery issues in the first instance).

Even now, Blount does not properly request additional discovery through an "affidavit or declaration" explaining that he "cannot present facts essential to justify its opposition."  FED. R. CIV. P. 56(d); *see also England v. Advance Stores Co. Inc.*, 263 F.R.D. 423, 432 (W.D. Ky. 2009) ("it is essential that the party requesting such relief file the affidavit").  Rather than provide any such affidavit, Blount's counsel recently moved to set aside (DN 137) this Court's order (DN 135) denying her previous motion to set aside Judge King's order (DN 49).  In it she complains about many of the same discovery issues without ever properly requesting an extension under Rule 56(d).  While counsel did raise concerns about a protective order with Judge King, she does not assert that she raised her numerous discovery disputes and concerns with him.  Second Motion to Set Aside at 4–6, 10–11.[1]  Instead, she advances a sort of Golden Rule argument, complaining that she provided some discovery that Stanley didn't.  But not all discovery requests are created equal, the Rules of Civil Procedure do not turn entirely on "fair" treatment, and no rule of "due

---

[1] Blount appears to be asking for a new protective order by saying that Magistrate Judge King's decision denying such an order was mistaken.  Second Motion to Set Aside at 2–4. Judge King denied the first protective order because Blount did not point to specific facts showing a serious injury, nor did he point to specific documents that would cause such an injury.  DN 60 at 5–7.  Blount argues he was specific because the release of his real estate client's phone numbers could cause him to lose his job or face lawsuits.  Second Motion to Set Aside at 2–4.  This does not alter Judge King's conclusion that the concerns were too broad and confusing to show a "clearly defined and serious injury."  *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (quotation omitted).  Protective orders are within the trial court's discretion and movants face a heavy burden when seeking such orders.  *See Williams v. Baptist Healthcare Sys.*, No. 3:16-cv-00236, 2018 WL 989546, at *2 (W.D. Ky. Feb. 20, 2018); *Proctor & Gamble Co. v. Banker's Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996).  It is not apparent that Blount would face any repercussions for merely revealing phone numbers pursuant to a subpoena or that anything other than Blount's phone activity and its timing will be at issue.  For example, the data does not include the substance of conversations or identifiers, so there is no way to distinguish between real estate clients and other contacts. Stanley is open to cooperating on a limited protective order.  DN 138 at 9.  But Blount has not even offered a scope or terms for anyone to evaluate.  So the Court does not believe there is good cause to issue a broad protective order at this time and will deny the motion.

process" indicates any constitutional error in the civil-discovery process here.  *Id.* at 2, 9 (citing, without elaboration, *Matthews v. Eldridge*, 424 U.S. 319, 334–35 (1976), which is of course not a discovery decision).  Such complaints are meritless and untimely.  Counsel should not have raised most of them.  And should've raised the non-frivolous objections with Judge King in the first instance, not with the district judge a year after the discovery deadline.

Blount's own filings illustrate the absurdity of these complaints.  Instead of properly seeking a discovery extension or raising these concerns, Blount decided to file his own motion for summary judgement first.  *See generally* Blount MSJ; *3D Enters. Contracting Corp. v. Nat'l Elec. Co.*, No. 7-80, 2008 WL 695353, at *3 (E.D. Ky. Mar. 12, 2008) (summary judgment not premature when party had filed its own summary-judgment motion).  Blount's motion griped about discovery some but focused on the argument that the record showed Blount was entitled to judgment on the merits regardless.  *See generally* Blount's MSJ at 4–9.  This pattern continued with the response to Stanley's motion for summary judgment.  It is difficult for Blount to argue, on the one hand, that the current record proves he deserves summary judgment, but on the other hand he lacks "facts essential to" his opposition to Stanley's summary-judgment motion.  *See* FED. R. CIV. P. 56(d).  And many of the disputes Blount now complains about, including his request to extend discovery, were *not* the subject of any objection after Judge King ruled against Blount on March 11, 2021.  DN 116.

It is too late in the day for Blount to turn up with a laundry list of discovery grievances.  Nor was a motion to reconsider the right way to ask for help.  The law sets a high bar for such motions because they are not meant to "re-litigate issues." *Owens v. Liberty Life Assurance Co. of Bos.*, No. 4:15-cv-71, 2016 WL 4499098, at *3 (W.D. Ky. Aug. 26, 2016) (quotation marks omitted); *Am. Marietta Corp. v. Essroc Cement Corp.*, 59 F. App'x 668, 671 (6th Cir. 2003).  But that is all Blount's motion does: relitigate issues for a *third* time, and without addressing the factors required for reconsideration.[2]  *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004).  To the extent Blount seeks new discovery, therefore, the Court denies those requests and denies the Motion to Set Aside (DN 137).

Lawyers are professionals and officers of the court.  They must know how to properly litigate disputes and navigate discovery.  This is crucial for the clients, the profession, and the courts.  Our system of adversarial but professional discovery, conducted largely independent of the courts' involvement, could collapse under the strain applied by tactics like Blount's if more lawyers followed suit.  That makes it

---

[2] Blount styles the motion as a motion to set aside, which only applies to judgments, not interlocutory orders like the one Blount is challenging.  *See Loomis v. Chrysler Corp.*, 4 F. App'x 214, 215 (6th Cir. 2001) (upholding a district court's denial of a Rule 59(e) motion to alter or amend a judgment because no final judgment had been entered).

incumbent on judges to enforce the rules of civil litigation and professional conduct that undergird our civil-justice system.

## B. Record Evidence

The oddities of this case did not end when briefing began.  Before considering the merits of the parties' summary-judgment motions, reliance on two unorthodox affidavits and one unorthodox expert witness raise questions about the scope of the record before the Court.

### 1. New affidavits

Blount's counsel responded to Stanley's summary-judgment motion in part by filing new affidavits from Blount.  Each affidavit, however, contains serious flaws.  The first was unsworn and filed with an electronic signature.  First Affidavit (DN 111-1) at 4–5.  Despite Stanley's argument, Stanley Response (DN 123) at 7, the Rules no longer require a formal affidavit signed by a notary, *see Ganesh v. United States*, 658 F. App'x 217, 220 (6th Cir. 2016).  The advisory committee's notes to Rule 56(c), as amended in 2010, say this is due to 28 U.S.C. § 1746.  That section allows for unsworn declarations if the affiant subscribes:

> "as true under penalty of perjury, and dated, in substantially the following form":

> "(1) If executed without the United States: 'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

> "(Signature).'"

28 U.S.C. § 1746.

While Blount's declaration does not have to perfectly follow this formula, he must at least sign and date the declaration "as true under penalty of perjury."  *Id*. He didn't.  At no point in the affidavit does Blount swear to the truth of his statements under the penalty of perjury.  The most the affidavit says is "FURTHER THE AFFIDAVIT SAYETH NAUGHT" (though his subsequent affidavit, discussed below calls this into question), "after having been duly sworn" (though the notary block is empty), and "[t]he foregoing Affidavit was acknowledged before me by Vulenzo L. Blount, Jr., as his free, voluntary act and deed" (though no one signed to this effect, which would be legally insufficient anyway).  *Id*. at 1, 4.  No date appears and the only signature is Blount's electronic signature, which the Local Rules of this Court prohibit.  *See Lambert v. Lowe's Home Centers*, LLC, No. 1:14-cv-107, 2016 WL 6123239, at *3 (W.D. Ky. Oct. 19, 2016) (only credentialed attorneys, and not parties, may use electronic signatures under the local rules).  Blount did not even fix this

affidavit when he refiled it later.  DN 128-63 at 4.  Because this affidavit is not a proper unsworn declaration under 28 U.S.C. § 1746, the Court must exclude it.

Blount submitted a second affidavit, which he signed, dated, and notarized. Second Affidavit at 21 (DN 128-64).[3]  But this affidavit, like his prior one, suffers from additional flaws.  Affidavits or declarations "must be made on personal knowledge" and the affiant must be "competent to testify on the matters stated."  FED. R. CIV. P. 56(c)(4).  An affidavit cannot rest on hearsay or secondary accounts.  *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 495–96 (6th Cir. 2002) (affidavit recounting another person's story of harassment was hearsay, lacked personal knowledge, and couldn't create an issue of material fact).  Nor can affidavits make "conclusions of law."  *Harrah's Ent., Inc. v. Ace Am. Ins. Co.*, 100 F. App'x 387, 394 (6th Cir. 2004) (quotation omitted) (affidavit about how the affiant interpreted an insurance policy was inadmissible).  So "conclusory allegations, speculation, and unsubstantiated assertions are not evidence" at the summary-judgment stage.  *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017).  Moreover, if a new affidavit "directly contradicts prior sworn testimony, it should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction."  *France v. Lucas*, 836 F.3d 612, 622–24 (6th Cir. 2016) (quotation omitted) (district court did not abuse its discretion when it struck an affidavit contradicting previous testimony in order to defeat summary judgment).

Neither of Blount's affidavits help him overcome summary judgment because both make legal conclusions, rely on secondhand information, and engage in speculation.  Both affidavits, for example, repeatedly complain about discovery and assert discrimination and retaliation in a conclusory fashion.  These are improper legal conclusions and requests.  First Affidavit ¶ 2 (complaining about not getting certain depositions); Second Affidavit ¶¶ 2, 6, 8, 11, 13 (lodging similar complaints and asserting retaliation and discrimination in a conclusory fashion).  "We, the Plaintiff herein," said Blount, "should be given due process and equal opportunity to prove my case to be allowed to subpoena the cell-phone records for the deponents." Second Affidavit ¶ 34.  Blount also repeatedly speculated about how his coworkers were treated or repeats information he saw in discovery without any personal knowledge.  First Affidavit ¶¶ 4–9 (stating Taylor and her husband got a raise and recounting what he saw in personnel files from discovery); Second Affidavit ¶¶ 1–14, 17, 20 (quoting Taylor's complaint and testimony, claiming she was promoted as a reward, repeating information from personnel files, and testifying about what others did and said with no personal knowledge).  In fact, a huge part of Blount's second affidavit is just him reiterating and quoting evidence from discovery and adding arguments to it.  ¶¶ 20–33.

These affidavits read like one of Blount's briefs that his counsel just had him sign.  The second concludes by declaring that the "Summary Judgment Motion for

---

[3] The notary was Blount's own counsel.

the Defendant should **NOT** be granted, as there is a material dispute of the facts." ¶ 34.  Saying it does not make it so—not in a brief, and certainly not in an inappropriate affidavit.  The Court will strike most of the second affidavit and consider only the portions that reflect observations and impressions within the declarant's personal knowledge.

## 2. Motion to exclude Mrs. Blount's "expert" testimony

Another piece of evidence that Blount relies on to show emotional damages is the "expert" testimony of his wife, Desma Blount.  Mrs. Blount Expert Report (DN 122-3).  For superficially obvious reasons that the content of Blount's "report" confirm, Stanley moved to exclude her testimony.  Motion to Exclude (DN 122).  The Court agrees.

The Sixth Circuit and Supreme Court have laid out familiar and basic requirements for the admission of expert testimony under Federal Rule of Evidence 702: (1) the witness must be qualified by knowledge, skill, experience, training, or education; (2) the testimony must be relevant, meaning that it will assist the trier of fact; and (3) the testimony must be reliable, as assessed by its factual basis and the sufficiency of its methods.  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008).  This is a "flexible" inquiry, *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 594 (1993), which affords trial judges "considerable leeway," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The proponent of the expert testimony bears the burden of establishing that the testimony meets those requirements by a preponderance of the evidence.  *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).  Blount's wife is neither qualified nor is her "report" reliable.

Mrs. Blount is not qualified to opine as a mental health counselor for adults, as she purports to do.  Mrs. Blount's qualifications are confined to the educational field, where she has a master's in education and guidance counseling for 5th to 12th graders.  Resume (DN 122-6) at 6.  She is not licensed as a counselor, has counseled only children, and has not counseled at all for at least 20 years.  *Id*. at 1–5 (listing work experience from 2002 to present as school administration, not clinical counseling); Mrs. Blount Deposition (122-4) at 20, 52, 54–57, 69, 74, 76 ("I am not employing mental health counseling services").  So Mrs. Blount is not qualified to act as an expert witness on counseling and emotional damages generally, especially not for adults.  And to the extent she opines on whether her husband was discriminated against and the amount of his damages, no information suggests any expertise in employment discrimination or economics, either.  Response to Motion to Exclude (DN 131) at 9, 19–20.  Nor did Blount disclose her as an expert in these fields, despite her testimony spilling into those subjects.  *See* DN 20 (disclosure deadline); DN 122-2 (interrogatory answers); *Blair v. GEICO Gen. Ins. Co.*, 917 F. Supp. 2d 647, 656 (E.D. Ky. 2013) (excluding late identified expert).

Blount tries to argue that his wife is an expert because as a principal she counseled upset parents and was subject to anti-discrimination laws in hiring and firing teachers, which a jury would not be familiar with. Response to Motion to Exclude at 5–8, 24–25. But being subject to a law of general applicability does not make one an expert in it; otherwise all manner of citizens might be qualified to opine on all manner of regulations. And an expert can't opine on legal conclusions in any event. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir.1994). Nor does handling upset adults make one an expert in adult counseling. *Id.* at 1351 (must be qualified in the specific issue, not general field). Especially not in a manner that would assist jurors with insight beyond their own general competence, which would quite likely include the emotional state of another adult. "It is not helpful to the jury when expert testimony gives lay testimony interpreting the facts of the case or addressing matters that are equally within the competence of the jurors to understand and decide." *Youngberg v. McKeough*, 534 F. App'x 471, 479 (6th Cir. 2013) (quotation omitted). Mrs. Blount could potentially serve as a lay factual witness regarding her husband's emotional state, but not as an expert opining on the underlying facts or law of this case.

It is also impossible to conclude that Mrs. Blount applied reliable methods reliably. Her report makes plain that she could not separate her purported roles as a wife and expert counselor. It did not explain what she did as a so-called "expert," or which if any methods she brought to bear in this case. Mrs. Blount Deposition at 92–93, 105–106 (answering "it's both" in response to "are you providing … support to Mr. Blount in your capacity as a guidance counselor or your capacity as a wife?"), 174, 181–83 (explaining her own emotional distress). As Stanley notes, the counseling profession generally considers counseling one's own family member to be inappropriate and even unethical. In those circumstances counselors cannot remain objective, which may impair their effectiveness. *See* American Counseling Association, Code of Ethics (DN 122-7); Ethical Standards for School Counselors (DN 122-8). So Mrs. Blount's own personal stake in this and the apparent counseling or assessment of her husband precludes her from offering reliable opinion testimony. She admits she "didn't perform a psychological examination," take notes, make a treatment plan, keep confidentiality, or make a diagnosis. Mrs. Blount Depo. at 92–93 (not providing "psychological" or "clinical" therapy or "therapy" generally at all, but rather "support"), 144–45 (she Googled PTSD and used her books, but didn't "give [a] medical diagnosis"), 145 ("I didn't create a written treatment plan, but we talked about things. And he didn't realize that's what we were doing"), 156–57 ("No. I did not take any notes. I was not in a clinical setting. I was at my home or we were walking or we were together"), 180–81 ("It was never clinical"). All of this appears to violate industry standards, and not in a way that a court might nevertheless consider reliable. *See* Code of Ethics; Ethical Standards for School Counselors. Simply repeating what a witness's husband told her about an incident is not a reliable method for opining about emotional distress, discrimination, or damages.

11

Once again, in attempt to avoid these obvious conclusions, Blount's counsel provided a late-breaking affidavit from Blount's wife. Desma Blount Affidavit (DN 131-10). This affidavit changes nothing, but does contradict some of Mrs. Blount's previous testimony. Her deposition testimony said she did not diagnosis Blount, but rather "determined [he] suffered from forms of emotional distress such as PTSD," from a Google search. Desma Blount Deposition at 145; *id*. ¶ 13. Her affidavit, however, avers that she created a "self-care treatment plan." Desma Blount Affidavit ¶¶ 2, 31. She did not, however, ever mention this in her report or deposition, and in fact said the opposite: she "didn't create a written treatment plan," Desma Blount Deposition at 145. She also speculates about the underlying case without personal knowledge and makes legal arguments. Desma Blount Affidavit ¶¶ 27, 30–33. So for the same reasons that parts of Blount's affidavits must be excluded, so must parts of Mrs. Blount's. *See Jones*, 677 F. App'x at 282; *France*, 836 F.3d at 622–24; *Berry*, 25 F.3d at 1353.

But even if this were not the case, the previous analysis shows that Mrs. Blount's proposed opinion testimony must be excluded because she is not qualified and did not reliably apply reliable methods. So the Court grants Stanley's Motion to Exclude (DN 122).

## C. Summary Judgment

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). While the Court must view the evidence in the light most favorable to the non-movant, *Green v. Burton Rubber Processing, Inc.*, 30 F. App'x 466, 469 (6th Cir. 2002), the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

As to discrimination, Blount claims that Stanley violated the Kentucky Civil Rights Act by treating him differently than similarly situated white employees based on his race.[4] Kentucky courts follow the burden-shifting approach in *McDonnell*

---

[4] Strangely, Blount argues that this is a disparate-impact, not disparate-treatment case. Blount MSJ at 7; Blount Response at 11. Disparate-impact claims target policies that are "fair in form, but discriminatory in operation" and often require statistics to show that a neutral policy has varying impacts based on race. *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971); *see also Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 987 (1988). Disparate treatment targets intentional discrimination where someone is treated differently than others based on a protected characteristic. *Watson*, 487 U.S. at 986. Blount clearly relies on the latter test for disparate treatment. He does not claim that Stanley had a neutral policy that affected blacks differently as a statistical matter. Instead, he argues that Stanley fired him, but not other similarly situated white employees, because he is black. That is a classic disparate-treatment claim.

*Douglas Corp. v. Green*, 411 U.S. 792 (1973) for such claims. *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 797 (Ky. 2004). This framework first requires a plaintiff to establish a "prima facie" case by showing that (1) he is a member of a protected group, (2) he was qualified for the position in question, (3) his employer took an adverse employment action against him, and (4) he "was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)); *see also Commonwealth v. Solly*, 253 S.W.3d 537, 541 (Ky. 2008) (applying the *McDonnell* framework to sex discrimination under Kentucky law and requiring a showing that "a similarly situated [person from a different group] was treated more favorably").

If a plaintiff makes out a prima facie case, the burden then shifts to the defendant to offer a "legitimate nondiscriminatory" reason for its actions. *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Finally, once this is done, the plaintiff must show that the defendant's explanations are a "pretext for discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08, 515 (1993). Essentially, the plaintiff must prove his ultimate burden that that the defendant intentionally discriminated against him by a preponderance of the evidence. *Id.* at 515. In this sense, the "ultimate burden" is always on the plaintiff. *Id.* at 507.

As to retaliation, these claims follow a similar pattern under *McDonnell*. A plaintiff must first make out a prima facie case that he was (1) engaged in a protected activity, (2) that defendant knew this, (3) that defendant took an adverse employment action against plaintiff after the protected conduct, and (4) that there was a causal connection between the protected conduct and an adverse employment action taken by the defendant. *See Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014); *Brooks*, 132 S.W.3d at 803. The burden then shifts to the defendant to offer legitimate non-retaliatory reasons for its actions. *Montell*, 757 F.3d at 504. And finally, the plaintiff must "put forward competent evidence from which a reasonable jury could conclude that the stated reason is merely pretextual." *Id.*

The parties disagree over much of the analysis, but agree that Blount is a member of a protected class and faced an adverse employment action. Stanley argues that Blount cannot make out a prima facie case that he was treated differently from similarly situated individuals not in his class, and that in any event it had legitimate and unrebutted safety reasons for terminating Blount. In addition, according to Stanley, the retaliation claim fails for lack of evidence that Blount's EEOC claim caused his termination. Stanley is correct on each point.

## 1. Prima facie showing

The parties mainly dispute whether he has provided sufficient evidence to allow for an inference of discrimination. Blount can do this by showing he was replaced by someone outside his protected class or that he "was treated differently

13

than similarly-situated, non-protected employees." *Wright*, 455 F.3d at 707 (quotation omitted); *see also Murray v. E. Ky. Univ.*, 328 S.W.3d 679, 682 (Ky. Ct. App. 2009). Blount opts to show that similarly situated white employees were treated preferably. Blount Response at 8, 11–13.

To be similarly situated means "all of the relevant aspects of [Blount's] employment situation are 'nearly identical' to those of the [non-protected] employees who he alleges were treated more favorably." *Pierce v. Commonw. Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994), *abrogated on different grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 US. 133 (2000). While an "exact correlation" between the plaintiff and the non-protected employee is unnecessary, the plaintiff must demonstrate that they are "similar in 'all of the *relevant* aspects.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quotation omitted). These aspects can include but are not limited to whether the employees have the same supervisor, work under the same standards, and "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quotation omitted). Typically the employees must have "engaged in acts of '*comparable seriousness.*'" *Wright*, 455 F.3d at 710 (sexual harassment not comparable to admitting an unauthorized person to the workplace and spreading rumors) (quotation omitted). If their conduct is "of a qualitatively different nature or under materially different circumstances" then they "are not 'similarly situated.'" *Turner v. Marathon Petroluem Co. LP*, No. 18-cv-15, 2019 WL 2517775, at *6 (E.D. Ky. June 17, 2019) (quotation omitted). For example, pharmacists who worked under the same supervisor, struggled to timely fill prescriptions, and made clerical errors were not similarly situated because the fired pharmacist committed more serious errors. *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 458–59 (6th Cir. 2010); *see also Clayton v. Meijer, Inc.*, 281 F.3d 605, 610–12 (6th Cir. 2002) (even though three white employees holding the same position committed the same safety error as the plaintiff, they were not similarly situated because plaintiff's error caused serious harm to co-worker). At the end of the day, the Court must "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich*, 154 F.3d at 352.

Blount identifies several white co-workers whom he says kept their jobs despite violations that were just as bad or worse. Blount Response at 11–15. According to Blount, many white employees had multiple violations, had second jobs, and were on their phones but were not fired like he was. *Id.*

Stanley, however, says those employees weren't similarly situated. It fired Blount because he caused serious safety risks by using a mobile device while driving a forklift, was issued a Last Chance Agreement, and violated that agreement by again using a device while on a running forklift. Stanley Response at 3, 9. Stanley produced evidence that no employee had ever used a device while on a running forklift, nor has any employee remained employed after violating a Last Chance Agreement. Shane

Dec. ¶¶ 27–29; Allen Dec. ¶¶ 18–20.   These differences are indeed relevant and distinguish Blount from the employees he identifies as comparable.   As explained below, those employees are not similarly situated to Blount.   And to the extent Blount argues that some other employees did violate Last Chance Agreements, no evidence indicates that Stanley *knew* about those violations yet allowed them to keep their jobs.

*First*, operating a large motorized vehicle like a forklift while using a distracting device obviously raises safety concerns for the operator, the employee, and others.   *See* Blount Depo. at 145 (admitting that driving a forklift distracted is dangerous).   Conduct that raises safety concerns for other people is clearly more serious than many other types of wrongful conduct, including those Blount invokes. *See Colvin*, 390 F. App'x at 458–59 (clerical errors that may harm customers are more serious than other clerical errors with less risk of harm).   Yet the conduct of several of Blount's proffered comparators are not of "*comparable seriousness*" and some do not raise safety concerns at all.   *Wright*, 455 F.3d at 710 (quotation omitted).   Broadly speaking, Blount complains that numerous white employees had second jobs and were on their phones at work.   Blount Response at 11, 15.   But Blount was not fired just for having a second job or even being on his phone at work; he was fired for doing so while on a running forklift.   And no evidence shows that the large group cited by Blount created any similar safety risks or that Stanley knew about these violations. Shane Dec. ¶¶ 27–28; Allen Dec. ¶¶ 18–19.

- Scottie Brumfield was suspended and given a Last Chance Agreement for looking at "inappropriate material" on a company computer. Brumfield Agreement (DN 128-21).   Brumfield testified the incident merely involved an accidental pop-up advertisement for a nudist colony. Brumfield Deposition (DN 128-22) at 50–51.   Blount's papers accuse Brumfield of something far worse.   Blount Response at 12.   Regardless, nothing about this incident, however serious it may be, raises workplace-safety concerns comparable to Blount's action.   Blount's only response is to criticize deposition testimony from Brumfield claiming he wasn't good with computers and had avoided the internet since.   Blount Response at 14; *id*.   This is beside the point.

- Chris Long entered into a Last Chance Agreement for leaving inappropriate notes for a co-worker.   Long Deposition (DN 128-28) at 80; Long Agreement (DN 128-29).   Interpersonal disputes, however, are not comparable to the types of safety concerns raised by distractions while operating a large motorized vehicle.   *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (cursing at a supervisor is not comparable to hiding company files and lying about it); *Colvin*, 390 F. App'x at 458– 59 (danger to others more severe).   Blount offers no counterargument.

- Brian Blake received an oral warning after he ran through a newly installed red-light that he was not aware of.   Blake Deposition (DN 128-

31) at 65–67; Shane Dec. ¶ 31 (no one trained on new light so no discipline issued for it). While this raises some safety concerns, the degree of seriousness of this single mistake is not comparable to operating a device (in this case, a smart watch) while on a running vehicle despite receiving a warning not to do so. *Wright*, 455 F.3d at 710. Blount also complains that Blake had other warnings in his file and was a drug user. Blount Response at 2; Blake Depo. at 65–67. But the other warnings dealt with poor attendance and performance, not safety concerns, and no evidence indicates Stanley was aware of any drug issues or how those created safety concerns comparable to Blount's conduct. Shane Dec. ¶¶ 31–32 (unaware of other safety violations or drug use). In fact, Blount's own dubious comparison chart notes that the warnings were unrelated to safety and does not mention other safety or drug issues. Comparison Chart (DN 128-1).

*Second*, Blount entered into a Last Chance Agreement that made clear that another similar violation would result in termination. Blount Last Chance Agreement. Within the same year, he was reported for using his device on a running forklift once again. Taylor Second Witness Statement; Taylor Depo. at 63. Violating a second chance in a similar manner, which violated a clear company policy, is another important distinction between Blount and most of his comparators. *See Turner v. Marathon Petroleum Co.*, 804 F. App'x 375, 379 (6th Cir. 2020) (being subject to different disciplinary processes is relevant). Again, while both Brumfield and Long were issued Last Chance Agreements, no evidence shows they violated them yet weren't terminated. Shane Dec. ¶¶ 35, 38–39; Allen Dec. ¶ 14; Brumfield Depo. (DN 123-8) at 51–52; Long Depo. (DN 121-17) at 32.

- David Noel, by contrast, was warned after using his phone next to a large machine, according to Blount, yet was retained after accruing multiple other warnings. Blount Response at 14; Noel Deposition (DN 128-16) at 75; Noel Discipline Form (DN 128-17). Numerous differences mark Noel's case, though, including the fact that his machine was enclosed and posed no threat to anyone except Noel. That renders the safety threat less serious. *Turner*, 804 F. App'x at 378–79 (comparator's safety violation posed risk to himself, whereas plaintiff's conduct posed risk to others); Noel Depo. (DN 123-6) at 85 (seated next to enclosed machine); Shane Dec. ¶¶ 35–36 (same). Plus, Noel's other warnings dealt with absences handled under a different collectively bargained policy. Shane Dec. ¶ 37. Finally, Stanley did in fact terminate Noel. *Id.* But unlike Blount the union chose to fight and got him reinstated. *Mitchell*, 964 F.2d at 583 (attendance issues not same as hiding files and lying); Shane Dec. ¶ 37 (terminated for absences but Union got him reinstated); *see also* Shane Dec. ¶¶ 9, 40, Att. A (Attendance Policy). Again, when lacking a real comparator, Blount claims that his co-worker often used drugs. Blount Response at 15. But

no evidence supports this as true, that Stanley knew it, or the existence of any particular incidents raising similar safety concerns.   May 2021 Shane Dec. (DN 134-10) ¶ 4.

- Tim Nosbusch received one Last Chance Agreement for making a rude comment, and then another a couple months later for failing to latch his safety lanyard to a piece of equipment.   Nosbusch Deposition (DN 128-32) at 35–36.   Even assuming the lanyard incident is of similar seriousness (of which there is no evidence), Nosbusch never violated his Last Chance Agreement like Blount.   Shane Dec. ¶¶ 35, 38; Allen Dec. ¶ 14; Nosbusch Depo. at 35.   Receiving two "last chances" doesn't mean the second infraction necessarily violated the first agreement. Nosbusch's agreements concerned fundamentally different conduct, so it makes sense that the first agreement, regarding interpersonal issues, didn't speak to the issues covered by the second agreement, which addressed safety violations.   Shane Dec. ¶ 8 (Union considers violations to be by "type").   Blount also claims that Nosbusch failed to use his lanyard another time, but nothing suggests Stanley knew about this incident, and Nosbusch claims it happened in a safer context.   Id. ¶ 35; Allen Dec. ¶ 14; Nosbusch Depo. at 35.

*Third*, Stanley had reason to believe that Blount had violated its safety policy and his Last Chance Agreement because Taylor had reported both incidents.   Taylor First Statement; Taylor Second Statement.   No evidence, however, tends to show that Stanley knew about any of the additional violations Blount accuses his comparators of.

This is clear based on the discussion above regarding several of Blount's comparators, such as Nosbusch.   *See* Shane Dec. ¶ 35 (no knowledge of other violations).   This is also an issue with Blount's closest comparator, Breck Cavanaugh, who received a Final Written Warning after backing into a wall with a forklift. Cavanaugh Discipline Form (DN 128-19).   This certainly would've raised safety concerns, but the record doesn't contain evidence that Cavanaugh ever committed another violation after his warning.   Blount argues Cavanaugh admitted he crashed several times, Blount Response at 13–14, but this doesn't follow from the evidence, which shows he was drug tested more than once, not that he crashed several times, Cavanaugh Deposition (DN 132-2) at 101–02.   And no evidence of these incidents or Stanley's knowledge exists.   Cavanaugh Depo. (DN 134-7) at 28, 99 (denying incidents); Shane Dec. ¶¶ 48–49, 33–34 (unaware of other incidents); Allen Dec. ¶¶ 16–17 (same); Stanley Reply at 10.   Blount also says he witnessed Cavanaugh showing Bonnie Taylor pictures of his children on his phone while on the plant floor. Blount Response at 12, 27.   But Blount admits he did not report this to Stanley, so this doesn't amount to evidence that Stanley knew about this incident yet took no or lesser action.   Shane Dec. ¶¶ 48–49; Allen Dec. ¶¶ 16–17; Blount Depo. (DN 123-3) at 272–73; Blount Response at 2.   In any event, showing someone pictures on the plant

floor is not comparable, from a safety perspective, to texting while on a running forklift.

One additional strain running through Blount's arguments is that many of these comparators received far more warnings than Blount. Blount Response at 12–13. Unfortunately for Blount, "[s]uperficial similarities between a disciplined employee and his colleagues are not sufficient to show a *prima facie* case of discrimination." *Arendale v. City of Memphis*, 519 F.3d 587, 604 (6th Cir. 2008). And many of these comparisons are "superficial," including a "reliance on the mere number of write-ups in each individual's file—without regard to other factors." *Lattimore v. Wild Flavors, Inc.*, No. 2009-23, 2012 WL 208078, at *11 (E.D. Ky. Jan. 23, 2012) (rejecting a prima facie case based on the similar number of disciplinary "write-ups" in co-workers' files). Blount's comparator's multiple warnings over a longer period of time for different and less serious infractions are hardly comparable to his two repeated and serious violations separated by less than a year.

Because Blount relies on only "[s]uperficial similarities" between his comparators, who are not "similar in all of the *relevant* aspects," he cannot make out a prima facie case of discrimination. *Arendale*, 519 F.3d at 604 (quoting *Ercegovich*, 154 F.3d at 352).

### 2. Legitimate non-discriminatory reasons and pretext

Even if Blount could make out a prima facie case for discrimination, Stanley had a legitimate non-discriminatory reason for firing Blount that Blount cannot rebut given the cited portions of the record. After a prima facie showing by the plaintiff, the defendant has the burden to present a "legitimate, nondiscriminatory reason" for its actions. *Burdine*, 450 U.S. at 254. The defendant can carry this burden by raising "a genuine issue of fact" through "admissible evidence," *id*. at 254–55, that "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, 509 U.S. at 507 (emphasis removed). In a 2007 decision, for example, the Sixth Circuit recognized three different reasons an individual's termination might have been legitimate: sexual harassment, job performance, and failing to follow procedures. *Wright*, 455 F.3d at 707.

Stanley has identified record evidence that it fired Blount because it reasonably concluded that he violated safety policies by texting while driving, agreed to a Last Chance Agreement, and then violated that agreement several months later by texting while on a running forklift. *See* Taylor First Witness Statement; Taylor Depo. at 40, 43, 63–64; Allen Dec. ¶ 6; Shane Dec. ¶ 14–16, 21–24; Blount Last Chance Agreement; Taylor Second Witness Statement. Safety and policy violations are clearly legitimate non-discriminatory reasons to fire an employee. *See Wright*, 455 F.3d at 707; *Mitchell*, 964 F.2d at 584 (employee misuse of company property was legitimate, nondiscriminatory reason for decisionmaker's firing).

18

So the burden flips back to Blount to prove that Stanley's explanations were actually a "pretext for discrimination." *Hicks*, 509 U.S. at 515–16. This is typically done by showing either: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). The crux is that the plaintiff must produce sufficient evidence that a reasonable jury could find that the defendant engaged in intentional discrimination by a preponderance of the evidence. *Hicks*, 509 U.S. at 507; *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (evidence must allow factfinder to reasonably reject defendant's explanation and infer discrimination).

Blount cannot meet this burden. His primary argument is that Stanley lacks any basis in fact for believing he was texting while on a forklift. This is because (1) Blount denies the conduct, (2) other employees did not witness the incidents, and (3) Taylor allegedly could not tell the forklift was running for the second incident, due to the machine's quiet operation. Blount Response at 21, 27. But a plaintiff "must allege more than a dispute over the facts upon which his discharge was based. He must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite*, 258 F.3d at 494. "If there is no material dispute that the employer made a 'reasonably informed and considered decision'… the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual." *Id.* (quotation omitted). This is true even if the reasons are "ultimately found to be mistaken, foolish, trivial, or baseless," because the question is the employer's intent. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).

Stanley investigated Taylor's allegations and found them to be credible. Allen Dec. ¶ 7. Blount merely denied the allegations without further explanation. *Id.* ¶ 8; Blount Depo. at 355–57. Given the prior phone warnings, Stanley would've been well within its rights to credit Taylor over Blount. Shane Dec. ¶ 13–14. Moreover, Blount's own Union refused to defend him after he declined to produce his phone records to prove his innocence and lied about having an attorney. Blount Depo. at 353–54, 363; Texts Between the Union and Blount; Union Letter. And when Blount's phone records were finally produced for this litigation, they tended to corroborate Taylor's story. First Incident AT&T Records; Second Incident AT&T Records. The question is not whether Stanley was right to fire Blount, but whether record evidence indicates Stanley didn't believe the reason it gave for doing so. At the very least, the evidence shows Stanley made a "reasonably informed and considered decision" based on an "honest belief" that Blount engaged in conduct that raised serious safety concerns and then violated a final agreement on this issue. *Braithwaite*, 258 F.3d at 494.

Blount hasn't identified any evidence to the contrary. He tries to infer concealment of a devious motive from evidence regarding the treatment of his proffered comparators discussed above. Blount Response at 19, 22–23; Blount Reply

19

at 10.  But in order to rebut a non-discriminatory justification, "the plaintiff may not rely simply upon his *prima facie* evidence but must, instead, introduce additional evidence." *Pennington v. W. Atlas, Inc.*, 202 F.3d 902, 910 (6th Cir. 2000) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).  And if his comparators couldn't suffice for a prima facie showing they cannot prove by a preponderance that Stanley intentionally discriminated against him.

Several arguments, some of which are frivolous or nearly so, also fail to supply the additional evidence Blount needs:

- He contends that Taylor must be a racist because she did not expressly call a black co-worker her friend.  Blount Response at 21, 23; Blount Reply at 10; Taylor Depo. (DN 132-2) at 54.  This cannot impute racism to Taylor, much less prove that Stanley intentionally discriminated against Blount.  *See Cecil v. Louisville Water Co.*, 301 F. App'x 490, 498 (6th Cir. 2008) (minor interpersonal conflicts, without more, are "too thin a basis" on which to premise claim of discriminatory animus).  Blount himself said that he had no basis to think Taylor reported him because of race.  Blount Depo. at 164–65.

- In another shot at Taylor, Blount argues that she and her husband received raises for reporting Blount.  Blount Response at 22–24; Blount Reply at 11; Taylor Depo. at 33–35; Mr. Taylor Deposition (DN 132-2) at 25–26.  Blount has no basis for this other than rank speculation.  *See Mitchell*, 964 F.2d at 584–85 ("rumors, conclusory allegations and subjective beliefs" are "wholly insufficient evidence to establish a claim of discrimination").  The person who hired Taylor for her new role within the company said she was not his first choice and he knew nothing about the Blount saga.  Shane Dec. ¶ 45; Vuchot Dec. (DN 121-20) ¶ 8.  Moreover, the Taylors were promoted long (8 and 13 months) after Blount was fired, straining any causal connection resting on temporal proximity.  As the Sixth Circuit has held in the retaliation context, "[a] time lag of seven months does not necessarily support an inference of a causal link; previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months."  *Parnell v. West*, 114 F.3d 1188, *3 (6th Cir. 1997).

- He argues, without support, that Stanley has been "hiding" some of its former employees and causing problems in discovery, the only explanation for which must be to cover up discrimination.  Blount Reply at 13; Blount Response at 18, 20, 24.  Blount points to a complaint that one employee had a KKK sign and is now disabled.  Blount Response at 20; Blount Reply at 10.  As with Taylor, it is hard to see how a disabled former employee's sign would prove intentional discrimination by the employer.  And again, Blount's discovery complaints mainly reflect the performance of his counsel, not Stanley.  Magistrate Judge King handled all discovery disputes, largely without objection, and without noting anything nefarious.  DN 116.

- Finally, Blount asserts that Stanley skipped steps in the disciplinary process. Blount Response at 2, 26.  But the company can terminate employee's immediately for serious violations, which Blount concedes.  Shane Dec. ¶¶ 6, 15; Blount Depo. at 281–82.  And Blount was given a Last Chance Agreement first because of his union's advocacy.  Shane Dec. ¶ 16–17.  In fact, one of Blount's comparators, Brumfield, received a Last Chance Agreement in response to a single incident as well—but Brumfield abided by it.  Brumfield Agreement.  Blount offers no evidence that this was a cover up or reflects a discriminatory motive.

Blount offers no "affirmative evidence" to establish that Stanley intentionally discriminated against him.  *Mitchell*, 964 F.2d at 584.  His rhetoric and speculation are insufficient to carry this burden.  *Id*. at 585.

### 3. Causation for retaliation

Blount's retaliation claim fails for the same reasons.  Stanley had a legitimate non-retaliatory reason for terminating Blount that Blount cannot show was pretext. That would suffice to grant summary judgment for Stanley.  But Blount's retaliation claim fails for the additional reason that no evidence connects Blount's protected conduct and his eventual termination.  *See Montell*, 757 F.3d at 504.  Circumstantial evidence of a causal connection must "raise the inference that [the] protected activity was the likely reason for the adverse action."  *Brooks*, 132 S.W.3d at 804 (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)).  This typically "requires proof that (1) the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action."  *Id*.

Blount claims that he was fired in August 2018 in retaliation for filing an EEOC complaint against Stanley in July 2015.  The EEOC dismissed the complaint in April 2016.  DN 121-21.  Blount has identified no evidence connecting the two events.  None of Stanley's employees involved in firing Blount were around when he filed the complaint or when the EEOC dismissed it.  Shane Dec. ¶¶ 2, 26.  Moreover, there is no temporal proximity between the events, as the termination came over three years after the complaint and over two years after its dismissal.  Indeed, the Supreme Court has said that an "[a]ction taken (as here) 20 months later suggests, by itself, no causality at all."  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001).  While such a long gap may not defeat a retaliation claim if other evidence is presented in support of a connection, it certainly cuts against an inference of retaliation.  *Brooks*, 132 S.W.3d at 804; *Holt v. JPMorgan Chase Bank, N.A.*, No. 3:07-cv-471, 2009 WL 982751, at *8 (W.D. Ky. Apr. 13, 2009) (one year later does not show temporal proximity).

Rather than provide evidence of causation, Blount appears to relitigate the merits of his 2015 complaint and complain about discovery. Blount Response at 8–10; Blount Reply at 10–13. At no point does he really offer evidence specific to his retaliation claim, instead opting to focus on the white employees, addressed in the context of his discrimination claim, whom he claims received preferential treatment. Blount Response at 8–17; Blount Reply at 7–13; Blount MSJ at 6–9 (addressing the discrimination and retaliation claims together). As noted, the individuals Blount identifies were not similarly situated and Stanley offers a compelling non-retaliatory reason for Blount's termination. "The absence of close temporal proximity and the presence of an obviously nonretaliatory basis for the [employer's] decision amount to insufficient evidence to permit an inference of retaliatory motive." *Lewis-Smith v. W. Ky. Univ.*, 85 F. Supp. 3d 885, 912 (W.D. Ky. 2015) (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010)), *abrogated on other grounds by Jackson v. Genesee County Rd. Comm'n*, 999 F.3d 333 (6th Cir. 2021).

Bizarrely, Blount seems to perceive an unbroken causal line between his 2015 EEOC complaint and his 2018 termination because he allegedly helped the EEOC investigate his complaint even after the Commission dismissed it in 2016. Blount Response at 24; Blount Reply at 12. He offers no evidence for this "investigation" and merely asserts that this is how he knows others were not terminated despite their violations of company policy. Blount Response at 24; Blount Reply at 12. Indeed, this never came up during Blount's deposition, when he instead stated that his complaint—not any subsequent investigation—was the only basis for retaliation. Blount Depo. (DN 134-6) at 339. The Court needn't accept Blount's late-breaking and evidence-free assertion that he was investigating Stanley on behalf of the EEOC even after his complaint was dismissed. Without any such evidence, Blount cannot prove causation. So his retaliation claim must fail.

### III.   Conclusion

Ideally, all litigation should focus on the merits: testing the parties' legal positions and developing facts in support of those claims and defenses. That's not how this case went. Unfortunately for Blount and all others involved, Blount's counsel twisted an employment dispute into a saga of obstruction, obfuscation, and ultimately sanctions. No judge wants to be a scold, wagging fingers at every lawyerly mistake. Advocating for clients is hard, and judges shouldn't pretend otherwise. But sometimes lawyers depart so far from basic notions of professionalism and candor that they raise the parties' costs, consume the courts' resources, and raise ethical concerns. In these cases, which should be few and far between, judges owe it to the profession to highlight the ways in which lawyers strayed. Otherwise, outlier cases that pass without mention could normalize or even reward misbehavior.

Based on the summary-judgment record, it's very unlikely that counsel's conduct affected the ultimate outcome here. But it certainly made these long-running proceedings less efficient and more acrimonious. As a result, the Court denies

Blount's motion to set aside (DN 137) the Court's opinion affirming sanctions, denies the new discovery requests, excludes Blount's first affidavit, strikes parts of Blount's second affidavit, and grants Stanley's motion to exclude "expert" testimony (DN 122). And because Blount's discrimination and retaliation claims fail at every step of the *McDonnell* burden-shifting test, the Court must grant Stanley's motion for summary judgment (DN 121) and deny Blount's motion for summary judgment (DN 111).

Benjamin Beaton, District Judge
United States District Court

March 29, 2022

23